OPINION
Shawn Ferris appeals his convictions by the Lawrence County Municipal Court for driving without a license in violation of R.C. 4507.02, failure to wear a safety belt in violation of R.C. 4513.263, leaving the scene of an accident in violation of R.C. 4549.02, and failing to control his vehicle in violation of R.C. 4511.02. On appeal, Mr. Ferris' appointed counsel advised this Court that he reviewed the record and could discern no meritorious claims for appeal and moved to withdraw as counsel underAnders v. California (1967), 386 U.S. 738, 18 L.Ed.2d 493,87 S.Ct. 1396.
After independently reviewing the record, we disagree because the record contains potential meritorious claims upon which Mr. Ferris might prevail on appeal. Accordingly, we decline to address the merits of Mr. Ferris' appeal until counsel to be appointed by this Court briefs and argues the points raised in this opinion. An order appointing counsel will follow.
 I.
On December 10, 1999, a one-vehicle collision occurred on County Road 115 in Union Township. State Highway Patrol Trooper Leah Mikes testified that when she arrived on the scene, the fire department and the emergency medical squad were already present. Trooper Mikes observed a 1988 red Ford Festiva in a small creek up against a tree. The passenger's side of the vehicle had very little damage to the dashboard area. The driver's side had extreme damage to the dashboard area, as well as damage to the steering wheel and the steering column. The windshield had also been broken out of the vehicle.
A member of the fire department informed Trooper Mikes that when they arrived on the scene, an occupant was crawling out of the vehicle. Trooper Mikes testified that the individual, Larry Wells, was intoxicated and indicated that he was in the vehicle but could not remember what had occurred; however, he thought a deer may have caused the accident. Mr. Wells had a slight head injury and injuries to his finger and eye.
Trooper Mikes then obtained statements from two bystanders, Donald Ferris and Gary Murdock. The two witnesses indicated that another occupant was in the vehicle. Based on this information, Trooper Mikes and the fire department personnel conducted a thorough search of the area. Trooper Mikes testified that she was concerned that the other occupant had been thrown from the vehicle or had crawled from the vehicle, attempted to run away, and was laying somewhere unconscious. However, no other occupant was located in the area. Trooper Mikes then cleared the scene and had a tow truck remove the vehicle. She was at the scene from approximately 6:30 p.m. to 7:30 p.m.
Trooper Mikes testified that appellant was identified as the owner of the vehicle and the dispatcher attempted to contact him. However, she was not certain whether contact was made. The following day, Trooper Mikes contacted Larry Wells at the hospital. She obtained a written statement from Mr. Wells. Later that evening, the appellant, Shawn Ferris, came to the patrol post to obtain a release for his vehicle. Trooper Mikes obtained a statement from him regarding the accident, reduced it to writing and had appellant sign it. Appellant told Trooper Mikes that he was not the driver of the vehicle, but the passenger, and Mr. Wells was driving. He indicated that Mr. Wells was driving because appellant did not have a driver's license. When Trooper Mikes stated that Mr. Wells was intoxicated, appellant indicated that he did not know that. Appellant also stated that he did not know what time the accident occurred and could not remember anything. He stated that he and Mr. Wells were coming from Mr. Wells' house and going to get a saw at another friend's house. He also indicated that he had crawled out of the car after the crash and passed out directly beside the vehicle where he laid for several hours before he regained consciousness. Scott Ferris, appellant's cousin or nephew, had driven by and seen him in the creek. Appellant told Trooper Mikes that Mr. Ferris had physically pulled him out of the ditch and placed him into his own vehicle. He asked to go to the hospital, but Mr. Ferris refused because he did not have enough gas or money to buy gas.
Trooper Mikes testified that appellant appeared to be in extreme pain and could barely walk. He pulled up his pants leg and showed Trooper Mikes his leg which was very bruised and cut up. He also had scratches and cuts on his face and stated that he had severe chest pains. Appellant had to hold onto the wall to help himself walk.
After interviewing appellant, Trooper Mikes asked Scott Ferris, who had accompanied appellant to the post, for a statement. He spoke to Trooper Mikes but refused to give a written statement.
Trooper Mikes testified that, based on her four and one-half years of experience investigating automobile crashes, she concluded that appellant's injuries were consistent with the damage to the driver's side of the vehicle. She stated that appellant's injuries to his chest, hips, legs and thighs were consistent with the damage caused to the dashboard area and steering column. Trooper Mikes testified that appellant's legs would not have been bruised if he were in the passenger's seat because there was no damage to the passenger side in that area. Trooper Mikes admitted, however, that it is possible that appellant sustained these injuries from being thrown out of the car.
Larry Wells testified that on the evening of the accident he was at his home, which he shared with his girlfriend. He drank four to five beers but was not intoxicated. Appellant came to his house and they went to get a saw from his friend's house. Initially, Mr. Wells testified that he did not remember much of the accident and could not remember who was driving.
Mr. Wells later testified that only he and appellant were in the vehicle. Mr. Wells stated that he had two operable vehicles of his own at home but he does not drive after he has been drinking. He then stated that he was positive he was not driving but he was not sure who was driving. Mr. Wells stated that he has never driven appellant's car and was wearing his seat belt at the time of the accident.
Mr. Wells testified that he broke his finger and hurt his back, his right arm and his knee in the accident. He also hit his head on the window and needed stitches. He suffered from headaches and dizzy spells as a result of the accident. Mr. Wells testified that nobody threatened to burn his house down or harm his children if he testified.
On cross-examination, Mr. Wells admitted that he told the trooper that he had twelve beers to drink. He also admitted telling the trooper that he did not know who was driving the vehicle.
On re-direct examination, Mr. Wells again stated that he did not know if appellant was driving the vehicle at the time of the accident. Mr. Wells did state, however, that if he was not driving and appellant was there, appellant had to have been driving. Finally, Mr. Wells conceded that appellant was driving him to get the saw.
Gary Murdock testified that he was visiting Don Ferris on the evening of the accident. They were in the garage talking when they heard a thump. Approximately twenty minutes later, a neighbor stopped by and told the men that there was a bad wreck up the road. Mr. Murdock ran up there but it was dark and he could not see. However, he could tell that there were two people in the car though he could not identify them. Donald Ferris accompanied Mr. Murdock to the scene, which was approximately six hundred feet away from the garage. The vehicle was in the creek and its front end was up on the bank. He could not recall what time the accident occurred.
Mr. Murdock testified that it appeared that the impact had thrown the two occupants together and the passenger was laying against the driver. Mr. Murdock asked Don Ferris' wife to call the emergency medical squad. Mr. Murdock returned to Don Ferris' property to tie up his dog and then returned to the scene of the accident. When he returned, there was only one person in the car. Mr. Murdock told the trooper that there were two people in the car. He did not know appellant at the time of the accident.
Donald Ferris testified that he is a distant relative of appellant's. After the accident, he and Mr. Murdock went to the scene but he could not see anything because there was no light. Donald Ferris testified that he could not tell how many people were in the vehicle though he was within fifteen to twenty feet of it. He saw a man get out of the car and try to get out of the creek away from the scene. However, he did not recognize the person. Ferris further testified that he did not see the other occupant until he was brought onto the road; Ferris did not see anybody lying around near the accident scene.
The trial court found appellant guilty of all the charges.
Under Anders v. California (1967), 386 U.S. 738, 18 L.Ed.2d 493,87 S.Ct. 1396, appellant's appointed counsel advised this Court that he thoroughly reviewed the record and can find no prejudicial errors from which he could base an assignment of error for appeal. Appellant's counsel requested leave to withdraw and, in accordance with Anders, accompanied his request with a brief referring to those portions of the record that might arguably support an appeal for our review and offered the following proposed assignments of error:
INEFFECTIVE ASSISTANCE OF COUNSEL[.]
 THE TRIAL COURT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
When presented with an appeal filed under Anders, we must undertake a full examination of the proceedings to determine whether the appeal is wholly frivolous. Anders, supra. If we find only frivolous issues on appeal, then we may proceed to address the case on its merits without assistance of counsel. State v. Hart (Dec. 23, 1997), Athens App. No. 97CA18, unreported. However, if we disagree with counsel and conclude that non-frivolous claims of appeal exist, we must afford appellant the assistance of counsel. Anders, supra; see, also, Penson v. Ohio (1988),488 U.S. 75, 102 L.Ed.2d 300, 109 S.Ct. 346.
 II.
In his first proposed assignment of error, appellant's counsel asserts that trial counsel was ineffective both in preparing for trial and at trial. He asserts that trial counsel failed to communicate with appellant prior to trial and failed to subpoena two witnesses who would have testified that he was not the driver of the automobile. Appellant asserts that he informed his trial counsel of the witnesses' existence but trial counsel failed to investigate their testimony. Appellant's counsel also asserts that trial counsel was ineffective in failing to present any evidence in appellant's case-in-chief.
The Sixth Amendment to the United States Constitution and Section 10, Article I, Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. Furthermore, the United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693, 104 S.Ct. 2052. In order to prove the ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance was in fact deficient, i.e., not reasonably competent, and (2) such deficiencies prejudiced the defense so as to deprive the defendant of a fair trial. Strickland,466 U.S. at 687, 80 L.Ed.2d at 693; State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
In State v. Cooperrider (1983), 4 Ohio St.3d 226, the Supreme Court of Ohio considered whether an appellate court can resolve an ineffective assistance of counsel claim which relies upon facts that are not in the record. While answering that question in the negative, the Court reasoned:
 It may be that in the present case appellant can allege sufficient facts to state a claim of ineffective assistance of counsel. However, it is impossible to determine whether the attorney was ineffective in his representation of appellant where the allegations of ineffectiveness are based on facts not appearing in the record. For such cases, the General Assembly has provided a procedure whereby appellant can present evidence of his counsel's ineffectiveness. This procedure is through the post-conviction remedies of R.C. 2953.21. This court has previously stated that when the trial record does not contain sufficient evidence regarding the issue of competence of counsel, an evidentiary hearing is required to determine the allegation. State v. Hester
[(1976), 45 Ohio St.2d 71]. Such a hearing is the proper forum for appellant's claim.
Id. at 228.
Appellate counsel alleges that trial counsel may have been ineffective in failing to meet with appellant prior to trial to prepare for the case and in failing to subpoena two witnesses whose testimony would have changed the outcome of the case. Neither of these issues can be determined from the record as it now stands. Accordingly, appellant's proper course is to petition the trial court for a post-conviction evidentiary hearing in order to develop a record upon which this issue may be more effectively addressed. Id. at 228-229.
Appellate counsel also alleges, however, that trial counsel may have been ineffective in failing to introduce any evidence or testimony in appellant's defense. As already noted, to succeed on an ineffective assistance of counsel claim, the appellant must demonstrate prejudice. To do so, the appellant must prove that, but for counsel's actions, there is a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of reasonable professional assistance. State v.Bradley (1989), 42 Ohio St.3d 136, 143, certiorari denied (1990),497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.
Here, defense counsel likely relied on the fact that the only witness claiming his client was the driver of the vehicle was Larry Wells. Mr. Wells clearly had an incentive to deny that he was the driver and his testimony was equivocal. Further, appellant's version of the accident came in through Trooper Mikes' testimony regarding the statements appellant made to her the day following the accident. Therefore, defense counsel's decision not to introduce evidence fell within the wide range of reasonable professional assistance. There is no evidence that appellant was prejudiced by his counsel's failure to present evidence. Furthermore, to the extent that evidence exists outside the record that would support this argument, it must be pursued in post conviction relief.
Wherefore, we find that an appeal based on ineffective assistance of counsel would be wholly frivolous.
 III.
The second proposed assignment of error argues that the decision of the trial court is against the manifest weight of the evidence.
When considering an appellant's claim that a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193. The reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997),78 Ohio St.3d 380, 387, quoting Tibbs v. Florida (1982), 457 U.S. 31,42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652. The reviewing court must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, keeping in mind that credibility generally is an issue for the trier of fact to resolve. Statev. Thomas (1982), 70 Ohio St.2d 79, 80; State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The reviewing court may reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. On the other hand, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt.
Although appellate counsel has not alleged that the evidence was insufficient, given that we must independently review the record for other errors, we also consider whether the prosecution produced sufficient evidence to sustain a conviction. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560.
Appellant was charged with and convicted of leaving the scene of the accident, failure to control his vehicle, failure to wear a seat belt and driving without a license. As noted by appellate counsel, the major issue in the trial was the identity of the driver. Based on the testimony of the witnesses, the driver clearly lost control of the vehicle and left the roadway. Mr. Wells testified that he was not driving the vehicle and appellant was the only other person who could have been driving the vehicle. Though he was obviously reluctant to testify that appellant was the driver, Mr. Wells' testimony supports such a finding. The credibility determination is properly left to the trial court, which obviously found that Mr. Wells' testimony, at least in this regard, was credible. Therefore, appellant's conviction for failure to control his vehicle is based upon sufficient evidence and likewise, is not against the manifest weight of the evidence.
Trooper Mikes testified that appellant was not at the scene of the accident when she arrived and was not located after a canvas of the vicinity. Further, Donald Ferris testified that he saw one of the vehicle's occupants walking away from the accident. Appellant's statement to Trooper Mikes that he was laying next to the vehicle for a couple hours after the accident is in direct conflict with this testimony. The court's finding of guilt on this charge is again supported by sufficient evidence and not against the manifest weight of the evidence.
Appellant was also found guilty of operating a motor vehicle without a license. The only evidence introduced at trial to support this finding was appellant's statement to Trooper Mikes that Mr. Wells was driving his vehicle because appellant did not have a driver's license. The trial court arguably erred in relying solely on that evidence to convict appellant of this offense.
The corpus delicti of a crime is the body or substance of the crime which includes two elements: (1) the act, and (2) the criminal agency of the act. State v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it aprima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." (Emphasis sic.) Id., paragraph two of the syllabus.
The Supreme Court of Ohio has since stated that "the corpus delicti
rule is supported by few practical or social-policy considerations."State v. Edwards (1976), 49 Ohio St.2d 31, 35-36, vacated on other grounds (1978), 438 U.S. 911. Thus, because of the "vast number of procedural safeguards protecting the due-process rights of criminal defendants," there is "little reason to apply the rule with a dogmatic vengeance." Id.
However, given that no evidence that appellant lacked a driver's license was introduced, other than appellant's statement to Trooper Mikes, this issue should at least be thoroughly briefed on appeal. We acknowledge that trial counsel did not object to the admission of this statement on this basis. Generally, a reviewing court will not consider issues which an appellant failed to raise initially in the trial court.Lippy v. Society Natl. Bank (1993), 88 Ohio App.3d 33. However, plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Crim.R. 52(B).
Appellant was also convicted of failing to wear his safety belt. However, a thorough review of the trial transcript reveals no evidence that appellant was not wearing his seat belt at the time of the accident. A copy of the police report, including appellant's statement to Trooper Mikes, is incorporated into the court file. In his statement, appellant admits that he was not wearing his seat belt. However, this statement was not introduced into evidence and there was no testimony from Trooper Mikes that appellant made such an admission. Furthermore, even if Trooper Mikes had testified that appellant admitted he was not wearing a seat belt, the corpus delicti rule would likely apply here as well. No witnesses or independent evidence establish that appellant was not complying with the safety belt law. Therefore, we find a meritorious issue on appeal as to whether there was sufficient evidence to convict appellant of this offense.
For these reasons, we find non-frivolous issues as to the convictions for driving without a license and failure to wear a safety belt upon which we must afford appellant the effective assistance of counsel. Accordingly, we decline to address the merits of this appeal at the present time. An order will be forthcoming appointing counsel to brief and argue the points raised here.
Abele, P.J. Evans, J.: Concur
 ________________________ William H. Harsha, Judge