JOURNAL ENTRY and OPINION.
{¶ 1} Appellant Harry D. Broadus appeals his jury trial conviction for felonious assault, felonious assault with a peace officer specification, a one-year firearm specification, a three-year firearm specification, and having a weapon under disability.
 {¶ 2} Broadus assigns the following errors for our review:
 {¶ 3} "I. The defendant was denied his constitutional right to a fair trial due to prosecutorial misconduct in closing which substantially prejudiced and misled the jury.
 {¶ 4} "II. The defendant was denied his right to effective assistance of counsel when defense counsel failed to keep out testimony of defendant's drug use, to adequately argue reasonable doubt as to count one or to object to numerous instances of prosecutorial misconduct.
 {¶ 5} "III. The trial court failed to adequately inquire into the reasons behind defendant's dissatisfaction with counsel, thus denying defendant his right to the effective assistance of counsel and due process.
 {¶ 6} "IV. The court erred in refusing to charge the jury on the lesser included offense of aggravated assault over the defendant's objection.
 {¶ 7} "V. The jury's decision finding the defendant guilty of felonious assault of a peace officer was not supported by sufficient probative evidence, and was against the manifest weight of the evidence.
 {¶ 8} "VI. The trial court erred in sentencing the defendant to consecutive terms on the two felonious assault charges without making the required findings."
 {¶ 9} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 10} Alyssa Birge testified, while sitting in her apartment she heard two males yelling. When she looked out of her window, she saw a male raising his arm chasing another male; she then heard gunshots being fired, and called the police. She testified to the above at trial but could not identify the person firing the weapon.
 {¶ 11} Sergeant Paul Shaughnessy, a police officer with the Cuyahoga County Metropolitan Housing Authority, testified while on duty in the area of Cleveland's Jay Avenue and West 25th Street, he heard several gunshots and saw Harry Broadus chasing and firing a gun at a male later identified as Johnny Clyde White.
 {¶ 12} Sergeant Shaughnessy pursued Broadus and told him to drop the gun. Broadus refused then fired another shot at White. After firing at White, Broadus turned toward Shaughnessy and pointed the gun at him. Shaughnessy then fired several shots hitting Broadus in his buttocks. A .22 caliber revolver was found next to Broadus and was admitted into evidence.
 {¶ 13} Officer Wilmore Larry testified he interviewed Broadus in the hospital shortly after the shooting incident. Wilmore stated: "Mr. Broadus admitted he was involved in an altercation with a guy who punched him in the mouth. Mr. Broadus admitted having a gun. He admitted shooting the gun. He also admitted throwing the gun in the bushes. He also stated he had used cocaine before the shooting occurred." During the interview, he also said he was responsible for the shooting.
 {¶ 14} Broadus was convicted and sentenced to five years on the charge of felonious assault against a peace officer, two consecutive years on the other felonious assault, and three consecutive years on the gun specification. This appeal followed.
 {¶ 15} In his first assignment of error, Broadus argues he was denied his constitutional right to a fair trial due to prosecutorial misconduct during closing argument.
 {¶ 16} The first statement at issue concerns the prosecutor's inaccurate remark that Broadus fired his gun at Sergeant Shaughnessy. Shaughnessy never testified Broadus fired his gun at him.
 {¶ 17} The second statement concerns the prosecutor's inaccurate statement concerning the distance from which Sergeant Shaughnessy was when Broadus fired the gun at him. Sergeant Shaughnessy testified Broadus was about 30 to 40 feet away. The prosecutor argued several times Broadus shot at Shaughnessy from point blank range.
 {¶ 18} Broadus next argues the prosecutor inflamed the passion and prejudice of the jury by appealing to community abhorrence with respect to crime in general and this specific crime. The following was stated by the prosecutor: "You, in this case, have the power to stand up and say, as a community, as a Cuyahoga County resident and for the people, specifically the citizens of Ohio City, that we are not going to stand for this. * * * [t]his is your decision that you can make in terms of a resident of Cuyahoga County, and also the decision on behalf of the people that work there, that live there in Ohio City, based on what he did that night."
 {¶ 19} Finally, Broadus argues that the prosecutor implied White did not testify because he was scared of Broadus.
 {¶ 20} The statements of the prosecutor were not objected to at trial and hence are to be examined under a plain error analysis.[1] A plain error analysis requires the examination of all properly admitted evidence in order to determine whether the jury would have convicted even if the error had not occurred.[2] The finding of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice."[3]
 {¶ 21} The prosecutor did misstate the facts. Broadus did not shoot at Shaughnessy, nor was he ever at point blank range from Shaughnessy. However, we cannot find these misstatements to be plain error in light of the evidence pointing to the guilt of Broadus. The eyewitness testimony of Sergeant Shaughnessy and Broadus' admission of his guilt to Officer Larry clearly shows the jury would have convicted him even if the error had not occurred. Accordingly, this assigned error is not well taken.
 {¶ 22} In his second assignment of error Broadus argues he was denied his right to effective assistance of counsel where counsel failed to keep out testimony of drug use, to adequately argue reasonable doubt, or to object to instances of prosecutorial misconduct.
 {¶ 23} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show trial counsel's performance fell below an objective standard of reasonableness and such performance resulted in undue prejudice.[4]
 {¶ 24} Although the admission of Broadus' use of cocaine could in some instances be prejudicial, we find no prejudice here where the evidence of Broadus' guilt is overwhelming. At best it is merely ancillary.
 {¶ 25} Having found the admission of Broadus' use of cocaine proper, we cannot find ineffective assistance of counsel for defense counsel's failure to object to its admission.
 {¶ 26} Finally Broadus argues he received ineffective assistance of counsel where defense counsel failed to argue reasonable doubt as to his guilt in count one and should not have focused on police protocol in regard to shootings. It appears that defense counsel focused on police protocol in order to establish reasonable doubt of his guilt by attacking the way in which he was shot. This was done to determine the relative position of Shaughnessy to Broadus. This was an attempt to counter the state's theory that the shooting of Broadus was a reaction by Shaughnessy to Broadus' pointing the gun at him.
 {¶ 27} Accordingly, we find no errors in counsel's trial strategy; furthermore, we find Broadus received a "fair trial and substantial justice was done."[5] Assigned error two is not well taken.
 {¶ 28} Broadus, in his third assignment of error argues the trial court failed to adequately inquire into the reasons he was dissatisfied with his counsel.
 {¶ 29} During proceedings before the commencement of trial Broadus stated to the court that defense counsel had never met with him before the trial. The trial court on the record asked defense counsel about his representation of Broadus. Counsel testified:
 {¶ 30} "Your Honor, since this is being put on the record, Mr. Broadus made all of these statements concerning what I have not done. I met on several occasions concerning this case. I explained to him, to the best of my ability, what the prosecutor's version of the facts are concerning how to put on the case. Frankly, he didn't want to hear what I had to say what the prosecutors had to say. He's telling me now how I didn't do this and that, and he wants to have his trial. He doesn't care how much time he's facing, you know, if that's what he's saying.
 {¶ 31} "I told him I will cross-examine their witnesses to the best of my ability and we'll just have to see what happens. For him to say that I never explained anything to him, he didn't want to hear what I had to say concerning what the prosecutor said or what their offers were. He wanted to tell me how he's not guilty. I said fine, we'll have a trial.
 {¶ 32} "Just wanted to put that on the record, since he's making all of these accusations of what I have not done in his case."
 {¶ 33} Finally, later in the trial, Broadus, stated to the court that he was satisfied with defense counsel. He said, "I feel like he's trying to help me."
 {¶ 34} We conclude, although there was initially a difference as to the perceptions between Broadus and defense counsel as to defense counsel's representation of Broadus prior to trial, the court did properly inquire as to Broadus' reasons for his dissatisfaction. The trial court chose to believe defense counsel's version and this court will not disturb the trial court's finding of fact. Accordingly, this assigned error is not well taken.
 {¶ 35} Broadus, in his fourth assignment of error argues the trial court erred in refusing to charge the jury in what he characterized as the "lesser included offense" of aggravated assault. Aggravated assault is not a lesser included offense of felonious assault. "It is, however, an inferior degree of felonious assault with a reduction in penalty upon the determination by the trier of fact of the existence of the mitigating circumstance of serious provocation."[6] "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force."[7] "If the jury finds the additional elements that the defendant acted under serious provocation, the offense is mitigated"[8] and a finding of aggravated assault is proper.
 {¶ 36} The only evidence of possible provocation is the statement Broadus made in the hospital to officer Wilmore that the victim punched him in the mouth. Broadus presented no testimony that he was under sudden passion or a fit of rage as is required under R.C. 2913.12, the aggravated assault statute.
 {¶ 37} "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."[9] InColeman, cited below, this court found sufficient provocation to warrant a charge on the lesser degree offense of aggravated assault where Coleman was confronted by the victim outside of his bedroom and refused to leave the house. The victim responded to Coleman's request to leave by cursing him and saying he was going to "kick his old ass," and by pointing his left finger at him while hiding his right hand behind his back. Shortly thereafter, Coleman shot the victim with a shotgun.[10]
 {¶ 38} Assuming Broadus was punched in the mouth by White, we do not find a punch in the mouth, with nothing more, to be serious enough provocation to cause him to use deadly force. We make this finding by noting the absence of any testimony by Broadus that he was under sudden passion or fit of rage at the time of the shooting.[11] Accordingly, this assigned error is not well taken.
 {¶ 39} Broadus, in his fifth assignment of error argues the verdict was not supported by sufficient probative evidence and was against the manifest weight of the evidence.
 {¶ 40} In order to determine whether a verdict was against the manifest weight of the evidence, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[12]
 {¶ 41} Broadus argues there was no evidence that he attempted to shoot Sergeant Shaughnessy. There is an assumption that the reason Shaughnessy shot Broadus is for self defense. Shaughnessy testified as follows when asked why he had to shoot Broadus: "Okay. Mr. Broadus was attempting to shoot another male, and then turned his gun towards me. He was taking aim and failed to comply with my verbal instructions to drop the gun." * * * "At first, I am thinking that somebody else, some innocent person is going to get shot. Then Harry Broadus is pointing the gun at me. I am thinking I am going to get shot." * * *
 {¶ 42} "The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2). While the pointing of a deadly weapon would undoubtedly justify a jury in concluding that the accused had committed the offense of `aggravated menacing' as defined by R.C. 2903.21, the act of pointing a deadly weapon at another is essentially an equivocal act as it relates to the accused's intention to cause physical harm to another by use of that weapon."[13]
 {¶ 43} This court in State v. Sunderland[14] found sufficient evidence for a conviction of felonious assault where an off-duty police officer struggled with the defendant after the defendant pointed a shotgun at him and threatened to blow his head off.
 {¶ 44} Here, as in Sunderland, we have additional evidence of Broadus' intention beyond merely pointing the weapon at Sergeant Shaughnessy. Sergeant Shaughnessy testified he observed Broadus chasing White and shooting as he ran after him. Broadus shortly thereafter pointed the gun at Shaughnessy. Broadus chased and shot at White. Afterwards, he turned his weapon on Officer Shaughnessy. These factors are more than sufficient to evidence Broadus' intent towards the officer.
 {¶ 45} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[15] We conclude sufficient evidence was presented at trial. Accordingly, this assigned error is not well taken.
 {¶ 46} Broadus, in his sixth assignment of error argues the trial court erred in sentencing him to consecutive terms on the two felonious assault charges without making the required findings concerning proportionality and the danger the offender poses to the public. We disagree. The trial court first found the sentence necessary to protect the public. Thereafter, the court held the sentence was proportionate to Broadus' conduct. The court felt Broadus placed the officer in great personal danger. Consequently, under R.C. 2929.14, the trial court made the required findings, and this error is not well taken.
Judgment affirmed.
MICHAEL J. CORRIGAN, P.J., and ANNE L. KILBANE, J., CONCURS
IN PART AND DISSENTS IN PART (SEE ATTACHED SEPARATE OPINION.)
[1] State v. Green (2000), 90 Ohio St.3d 352.
[2] State v. Slagle (1992), 65 Ohio St.3d 597.
[3] State v. Long (1978), 53 Ohio St.2d 91.
[4] State v. Madrigal (2000), 87 Ohio St.3d 378, citing Strickland v.Washington (1984), 466 U.S. 668.
[5] State v. Hester (1976), 45 Ohio St.2d 71, paragraph 4 of the syllabus.
[6] State v. Coleman, Cuyahoga App. No. 80595, 2002-Ohio-4421.
[7] State v. Deem (1988), 40 Ohio St.3d 205, paragraph five of the syllabus.
[8] State v. Cody, Cuyahoga App. No. 77427, 2002-Ohio-7055.
[9] Coleman at p. 23.
[10] Coleman at p. 35.
[11] State v. Cunningham (Oct. 17, 1991), Clark App. No. 2759, unreported.
[12] State v. Martin (1983), 20 Ohio App.3d 172, 175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42.
[13] State v. Brooks (1989), 44 Ohio St.3d 185.
[14] (Dec. 19, 1985), Cuyahoga App. No. 49950.
[15] State v Seldon, Cuyahoga App. No. 80129, 80130, 2002 Ohio 5825